IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| LUIS MANUEL GOMEZ RODRIGUEZ, | NO. 15-566 |
| Defendant. | |

**Slomsky, J.**                                                                                    **August 16, 2022**

## I.     INTRODUCTION

Pro se Defendant Luis Manuel Gomez Rodriguez, who is serving a 128-month sentence, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc No. 111.)   In his Motion, Defendant argues he has medical conditions and family circumstances that warrant his early release from imprisonment.  (See Doc. No. 111 at 4.)  Specifically, he contends that, given the COVID-19 pandemic, his hypertension, high cholesterol, and need to care for his elderly parents in the Dominican Republic amount to extraordinary and compelling reasons that justify his release.  (See id.)

The Government opposes Defendant's Motion, citing Defendant's vaccination against COVID-19, his failure to show that he suffers from a medical condition posing the risk of death or serious illness should he contract COVID-19, and the Bureau of Prisons' ("BOP's") success in mitigating the spread of COVID-19 at the Gilmer Federal Correctional Institution ("FCI").  (See Doc. No. 115 at 115.)  Further, the Government argues that Defendant does not provide persuasive enough details about his caregiver status or the level of care his parents require to warrant his release.  (See id. at 17.)  For reasons that follow, this Court will deny Defendant's Motion.

## II.    BACKGROUND

### A.    Defendant's Criminal History

Defendant Rodriguez is currently incarcerated at the Gilmer Federal Correctional Institution, located in Glenville, West Virginia, for his involvement in a large-scale heroin packaging operation in Philadelphia, Pennsylvania.  (See Doc. No. 115 at 3.)

From October 9, 2015 to October 22, 2015, agents conducted surveillance of a house located in Philadelphia, Pennsylvania, suspected to be a heroin packaging facility.  (Id. at 1–2.) On October 14, 2015, two hours after seeing a man enter the house and exit with a large bulge in his pants, law enforcement observed Defendant enter the same house and stay for one minute.  (Id. at 2.)  Officers also saw Defendant enter and exit the same house before October 14, 2015.  (Id. at 2.). On October 22, 2015, Defendant drove another man to the house.  (Id.)  Defendant entered the house with a box and left with the same box empty.  (Id.)  That same day, he returned to the house. While Defendant was inside, law enforcement agents searched the house and "found approximately 12 kilograms of bulk heroin in secret compartments in the furniture, $79,286 in cash, and a loaded 9mm firearm, which had been stolen."  (Id.)

On December 2, 2015, a four-count indictment was returned, charging Defendant with the following offenses:

1.  Conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One);

2.  Possession with intent to distribute one kilogram or more of heroin and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 (Count Two);

3.  Possession with intent to distribute one kilogram or more of heroin within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a) (Count Three)); and

4.  Possession of a firearm in furtherance of a drug trafficking crime and aiding and abetting, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 2 (Count Four).

(<u>Id.</u>)

Defendant pled guilty to the offenses charged in Counts One, Two, and Four and was sentenced to 128 months' imprisonment.  (<u>Id.</u>)  He is serving his sentence at FCI Gilmer.  (<u>Id.</u>)  To date, Rodriguez has served approximately 81 months and apparently will receive 11 months' credit for good conduct.  (<u>Id.</u> at 3.)  Since Rodriguez is not a United States citizen, he is not eligible for home confinement before his release date.  (<u>Id.</u>)

On July 7, 2021, Defendant submitted his first request for compassionate release to the Warden.  (<u>Id.</u>)  In support, he cited hyperlipidemia, post-COVID-19 back pain, and the fact that he would have had a lower sentence under the First Step Act as reasons why he should be released. (<u>Id.</u>)  On July 15, 2021, the Warden denied this request.  (<u>Id.</u>)  On July 27, 2021, Rodriguez submitted an additional request for compassionate release in response to the spread of COVID-19. (<u>Id.</u>)  The Warden denied this second request on August 24, 2021.  (<u>Id.</u>)

On October 25, 2021, Defendant filed the <u>pro se</u> motion for compassionate release with this Court.  (<u>Id.</u>)  As noted, Defendant cited hypertension and high cholesterol, COVID-19 risk factors, and his family circumstances as reasons for relief.  (<u>See</u> Doc. No. 111 at 4.)  The Government opposes Defendant's Motion, arguing that he does not give any extraordinary and compelling reason for relief under 18 U.S.C. § 3582(c)(1)(A)(i).  (<u>See</u> Doc. No. 115 at 15.)  On April 4, 2022, Defendant filed a Reply to the Government's Response.  (<u>See</u> Doc. No. 118.)  For reasons that follow, Defendant's Motion for Compassionate Release will be denied.

## III.   DISCUSSION

### A.   The Analytical Framework: Assessing Motions for Compassionate Release Under 18 U.S.C. § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . ." 18 U.S.C. § 3582(c).  Still, there are "a few narrow exceptions" to this rule.  <u>Freeman v. United States</u>, 564 U.S. 522, 526 (2011).  The compassionate release statute, § 3582(c)(1)(A), amended by the recently enacted First Step Act, § 3582(c)(1)(A), empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant exhausts his administrative remedies.[1]  <u>See</u> § 3582(c)(1)(A)(i).  The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> > (i)   extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

---

[1]   A defendant may file a motion for compassionate release directly with a district court after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" <u>United States v. Raia</u>, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. <u>See</u> § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement.  In its Response in Opposition, the Government condedes that more than thirty days have passed since Defendant's request was received by the Warden. <u>See</u> Doc. No. 115 at 3–4.

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines highlights that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
>   (1)  (A)  Extraordinary and compelling reasons warrant the reduction; . . .
>
>   (2)  the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>   (3)  the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances.  § 1B1.13 n.1(A)-(C).  This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>   (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

(I)    suffering from a serious physical or mental condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)  experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  Age of the Defendant. The defendant

(i)    is at least 65 years old;

(ii)   is experiencing a serious deterioration in physical or mental health because of the aging process; and

(iii)  has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family circumstances.

(i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[2]

---

2    Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance").

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive[.]" United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. WL 3046086, at *3 (D. Me. July 11, 2019)). Accordingly, district courts have the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395. Notably, the Sentencing Commission has not amended section 1B1.13 or its commentary to account for the First Step Act.

Today, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. WL 2509107, at *5 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596–97.

Further, Application Note 1 to section 1B1.13 explains that a defendant's family

circumstances may present an extraordinary and compelling reason for compassionate release in two specific contexts. See U.S.S.G. § 1B1.13 app. note 1. First, the death or incapacitation of the caregiver of the defendant's minor child or minor children may constitute an extraordinary and compelling reason under the statute. U.S.S.G. § 1B1.13 app. note 1(C). Second, an extraordinary and compelling reason for release may exist following the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. (Id.) Accordingly, a family member's illness—absent incapacitation or death—does not create an extraordinary and compelling family circumstance. (Id.)

In cases where defendants fail to show that they would be the only available caregiver—even if their incarceration imposes substantial burdens on their spouse or co-parent to a minor child—district courts routinely reject motions for compassionate release. See e.g., United States v. Hill, No. 18-271, 2020 U.S. Dist. WL 4431530 (E.D. Pa. July 31, 2020); United States v. Richardson, No. JKB-09-0288, 2020 U.S. Dist. WL 3267989 (D. Md. June 16, 2020). For example, while the district court in United States v. Thornton reacted sympathetically to challenging family circumstances, the defendant's motion for compassionate release was denied despite his 8-year-old son's history of cancer and his wife losing her job and their home. No. 2:18-167-1, 2020 U.S. Dist. WL 4368155, at *5 (W.D. Pa. July 29, 2020). In its opinon, the court noted that defendant's case did not involve the incapacitation of a caregiver. See id.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted. See Somerville, 463 F. Supp. 3d at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). The district court must also determine the extent of the reduction. United States v. Pawlowski, 967 F.3d 327,

331 (3d Cir. 2020).

Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term.

**B.    Defendant's Motion for Compassionate Release Will Be Denied**

Defendant's Motion will be denied because: (1) he lacks an extraordinary and compelling reason for his release pursuant to the statute, and (2) the relevant Section 3553(a) factors weigh against a reduction or modification of his sentence.

1. **Defendant's Medical Conditions and Family Circumstances Do Not Present Extraordinary and Compelling Reasons**

First, Defendant argues that his hypertension and high cholesterol "place him at a high risk for experiencing severe illness should he contract COVID-19[.]" (Doc. No. 118 at 1.) According to Defendant, because these medical conditions may threaten his life should he contract COVID-19, he claims they constitute extraordinary and compelling reasons entitling him to early release under § 3582(c)(1)(A)(i). In its Response in Opposition, however, the Government cites medical records revealing that Rodriguez "is in good health with almost no medical issues[—]and none that are recognized by the CDC as placing him at high risk [of developing serious or life-threatening symptoms] from the effects of COVID-19." (Doc. No. 115 at 4.) More specifically, the Government notes that there is no diagnosis of high cholesterol in Defendant's medical records and a chest X-ray in April 19, 2021 led to no diagnoses of note. (See Ex. A at 36.)

And while the Government concedes that Defendant received a high blood pressure reading on May 4, 2021, his medical records show that he was not diagnosed with hypertension following this finding. (See Ex. A at 17.) But more significantly, Defendant has had two doses of the Pfizer COVID-19 vaccine and a Pfizer COVID-19 booster. He received his first dose on April 6, 2021, a second dose on April 27, 2021, and the booster on January 12, 2022. (See Ex. A at 19.) And even if Defendant did suffer "from debilitating health [c]onditions," his medical records suggest that he is generally in good health and capable of engaging in all daily activities, and that the vaccinations afford him sufficient protection should he contract COVID-19. (Doc. No. 115 at 4.)

Further, case law in this District illustrates the connection between vaccination for COVID-19 and the denial of motions for compassionate release. See, e.g., United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19

vaccines."); United States v. Slone, No. 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021)

("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated

having received two doses of the effective Moderna [COVID-19] vaccine and he otherwise does

not present health concerns rising to the level of extraordinary and compelling reasons for

release."); United States v. Roper, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021)

("[T]he [BOP] medical staff is actively treating and successfully managing Mr. Roper's conditions,

and, perhaps most importantly, the Bureau provided the first of two vaccination shots several

weeks ago and no one suggests delay in the second shot. Mr. Roper does not present an

extraordinary and compelling reason for his release."); United States v. Ulmer, No. 18-00579-3,

2021 WL 844579, at *3 (E.D. Pa. Mar. 5, 2021) ("Ulmer's request for compassionate release has

no merit in fact or law. He presents minor health concerns and his recovery from COVID-19 and

vaccination significantly outweigh any issues at FPC Lewisburg.").

Additionally, these holdings have remained consistent despite the propagation of new

strains of COVID-19. See United States v. Webb, CR 09-755 WL 206174 (E.D. Pa. Jan. 24, 2022)

("[N]either the Delta nor the Omicron variants significantly alter the Court's prior analysis in its

decision denying Defendant's First Motion."); United States v. Martin, CR 98-178, 2021 WL

4169429, at *6 (E.D. Pa. Sept. 14, 2021) ("[W]e join the significant majority of judges reviewing

the Delta variant arguments who choose to follow CDC guidance to allow consistency in prisoner

treatment. As Judge Murphy reasoned, '[n]othing about the Delta variant changes the fact that

[Mr. Martin's] vaccination status renders his fear of COVID-19 a noncompelling reason to grant

him release.' ") (quoting United States v. Proge, 2:12-CR-20052-06, 2021 WL 3857440, at *1

(E.D. Mich. Aug. 30, 2021)); United States v. Gibbs, CR 96-539-2, 2021 WL 3929727 (E.D. Pa.

Sept. 2, 2021) (denying motion for compassionate relief notwithstanding the spread of the Delta

variant in part because the "defendant ha[d] been inoculated against COVID-19 with a highly effective vaccine").

Therefore, despite the emergence of the Delta and Omicron variants, vaccination against COVID-19 continues to weigh heavily against granting motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  In addition, Defendant does not present any concerning medical conditions and he has been fully vaccinated.  Furthermore, in its Response, the Government highlights the BOP's success in mitigating the spread COVID-19 with extensive changes to its operations, including effective vaccination efforts, social distancing, and quarantine policies.  (Doc. No. 115 at 6.)

Moreover, this Court is unpersuaded by Defendant's argument that his family circumstances present an extraordinary and compelling reason for compassionate release.  While a family circumstance may create an extraordinary and compelling reason under the relevant statute, a defendant must show: (1) the death or incapacitation of the caregiver of his minor child or minor children, or (2) the incapacitation of his spouse or registered partner, for whom he serves as the only available caregiver.  U.S.S.G. § 1B1.13 app. note 1(C).  Even in cases where a defendant's incarceration creates significant burdens for a spouse or co-parent, district courts have typically denied motions for compassionate release where the defendant fails to establish their role as the sole caregiver.  See e.g., United States v. Hill, No. 18-271, 2020 WL 4431530 (E.D. Pa. July 31, 2020); United States v. Richardson, No. JKB-09-0288, 2020 WL 3267989 (D. Md. June 16, 2020).

Here, Defendant contends that he must care for his elderly parents because they are experiencing "severe illness" in the Dominican Republic and do not have a caretaker.  (See Doc. 111 at 4.)  Despite this unfortunate family situation, Defendant does not provide information on

whether other family members are available to care for his elderly parents.  Defendant has not shown with convincing documentation that his parents are incapacitated and why he must serve as his parents' caretaker instead of his three siblings.  See PSR ¶ 53.

### 2. The Section 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Furthermore, the § 3553(a) sentencing factors counsel against granting Defendant's Motion.  First, in examining the nature and circumstances of the offense and Defendant's history and characteristics, the Court notes the severity of Defendant's narcotics offenses as well as his health and age.  (See Doc. No. 115 at 4.)  Significantly, Defendant is 43 years old and in good health.  (Id.)  Second, the Court has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him.  See § 3553(a)(2)(A)-(C).  While the Court acknowledges Defendant's positive disciplinary record and credit for good conduct at FCI Gilmer, a reduction in sentence would not serve these § 3553 factors.  The magnitude of Defendant's narcotics offenses warrant the sentence he received.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See § 3553(a)(6). Before Defendant's sentencing, the federal sentencing guidelines prescribed a sentence of 180 to 195 months.  (See Doc. No. 115 at 3.)  Defendant was sentenced to 128 months.  (Id.)  Notably, Defendant received a sentence below the range in the sentencing guidelines, which were drafted to mitigate sentencing disparities.  In this case, a reduction in Defendant's sentence would risk sentencing inconsistency among other similarly situated defendants.

Thus, none of the applicable § 3553(a) factors favor Defendant's early release.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 118).  An appropriate Order follows.